## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARJAM SUPPLY COMPANY,** | Civ. No. 11-7119 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **FIRESTONE BUILDING PRODUCTS COMPANY, LLC, FIRESTONE DIVERSIFIED PRODUCTS, LLC, ALLIED BUILDING PRODUCTS CORP., PERFORMANCE ROOFING ASSOCIATES, INC., ROOFING SPECIALTIES, INC., and CHARLES "CHUCK" GOLDEN** | |
| **Defendants.** | |

**<u>WILLIAM J. MARTINI, U.S.D.J.</u>:**

  This matter comes before the Court on three motions to dismiss under Federal

Rule of Civil Procedure 12(b)(6) filed by: (1) Defendants Firestone Building Products

Company and Firestone Diversified Products, LLC (hereinafter "Firestone"); (2) Allied

Building Products Corp. ("Allied") and Charles Golden; and, (3) Defendants

Performance Roofing Associates, Inc. ("Performance") and Roofing Specialties, Inc.

("RSI").  Plaintiff Marjam Supply Company ("Marjam") opposes the motions.  For the

reasons set forth below, the relief sought by Defendants will be **GRANTED** in part and

**DENIED** in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Firestone is the leading manufacturer of commercial roofing systems and related roofing products ("Firestone Products") within the United States.  (Compl. ¶ 16.) Firestone markets and sells its Firestone Products primarily through: (1) independently owned distributors ("Distributors"), such as Plaintiff Marjam and Defendant Allied; and (2) independent manufacturer representatives ("Manufacturer Representatives") including Defendants Performance and RSI.  (*Id*. at ¶ 18.)

<u>Distributors v. Manufacturer Representatives</u>

Based on the pleadings, it appears that Manufacturer Representatives market Firestone Products to members of the construction industry, *e.g.*, architects and contractors; Distributors, on the other hand, sell Firestone Products to third parties.  (*Id*. at ¶¶ 18, 23.)  It is clear that Distributors and Manufacturer Representatives are contractually assigned to specific and oftentimes overlapping geographic areas in which to market and sell Firestone Products.  (*Id*. at ¶¶ 18, 22, 26.)  However, as pled, it is unclear what the nature of the relationship is between Distributors and Manufacturer Representatives as it relates to the marketing and sales of Firestone Products.[2]

In 1995, Marjam became one of Firestone's Distributors, *id*. at ¶ 55, which the Court infers to mean that at that time, Marjam first entered into a contractual relationship with Firestone to sell Firestone Products to third parties in certain specified geographical territories.  Defendant Allied and non-parties ABC Supply Co., Inc. and its subsidiary,

---

[1] As this is a 12(b)(6) motion to dismiss, the following version of events assumes Plaintiff's allegations in the Complaint are true.

[2] The Court notes that Marjam has pled that it was required to supply Performance and RSI with marketing information and customer lists.  (Compl. ¶ 60.)

Bradco Supply Corp., are also Firestone Distributors and directly compete with Marjam for the same business in various sales territories.  (*Id*. at ¶¶ 34, 44.)

Beginning in August 1999, Marjam became a Distributor in a sales territory which included Philadelphia.  (*Id*. at ¶ 56.)  Allied became Marjam's direct competitor in the Philadelphia market on November 1, 2001.  (*Id*. at ¶ ¶ 34, 36, 51.)

In spite of competition from direct competitors, from 1999 through 2009, Marjam's sales of Firestone Products "grew exponentially."  (*Id*. at ¶ 66.)  However, in 2010 and 2011, Marjam's sales of Firestone Products suddenly plummeted.  (*Id*.)  Marjam attributes its decline in sales to certain actions taken by Firestone.

Specifically, Marjam alleges that beginning in 2010, Firestone sold identical Firestone Products to Allied, ABC, and Bradco for significantly less than the prices which Firestone made available to Marjam.  (*Id*. at ¶¶ 72-73.)  Marjam further alleges that in that same time period, Firestone offered Marjam's direct competitors – but not Marjam – certain rebates and price discounts, as well as secret financing and extended payment terms.  (*Id*. at ¶¶ 74-79, 80.)  Specific examples include: Firestone selling identical quantities of APP160 Firestone roofing products to Marjam for $1.25 more per roll than it did to one of Marjam's direct competitors; a "March 2010 Incentive Stocking Program"; and, special buy programs and rebates.  (*Id*. at ¶ 80.)  On October 25, 2011, Firestone terminated its Distributor Agreement with Marjam, effective as of December 31, 2011.

Marjam claims that as a result of Firestone's actions, Marjam's business has suffered due to lost sales, profits, and customers.  Moreover, Allied is now the only significant Distributor of Firestone Products within Philadelphia.  (*Id*. at ¶¶ 70, 83.)

Marjam asserts that Firestone's actions were instigated and promoted by Performance, RSI, Allied, ABC, and Bradco, who all viewed Marjam as a "price cutter." (*Id*. at ¶¶ 68-69.)  However, Marjam does not allege any specific instances showing how any of those parties instigated, promoted, or were in any other way involved in Firestone's decisions to offer less favorable sales terms to Marjam or to terminate Marjam's Distributor Agreement.[3]

<u>Charles "Chuck" Golden</u>

Defendant Charles Golden is a former Marjam employee.  Marjam claims that in the course of that employment, Golden gained access to Marjam's confidential and proprietary Firestone Products sales information.  Marjam further claims that "Golden executed an Employment Agreement" under which he agreed that he would not disclose that information.  (*Id*. at ¶¶ 50-54.)

On April 7, 2011, Golden resigned from Marjam to join Allied.  (*Id*. at ¶ 51.) Marjam asserts that Golden is now disclosing Marjam's proprietary information to Firestone, Allied, Performance, and RSI, in violation of his Employment Agreement. Marjam further claims that Defendants' use of that information allowed Firestone to terminate Marjam's Distributorship without materially affecting Firestone's sales of

---

[3] The Court notes that Marjam's pleading alleges that a Performance employee recognized that former-Marjam employee "[Charles] Golden's specific knowledge of Marjam's Firestone Product customers would assist Firestone in retaining Marjam's Firestone [sic] customers when and if Marjam was terminated as a Firestone distributor." (Compl. ¶ 54.)  However, it is unclear whether that information was ever conveyed to Firestone.

Firestone Products.  (*Id*. at ¶ 124.)  However, it is unclear how and why Golden shared that proprietary information with Firestone.  Moreover, Marjam does not allege any facts which suggest that Allied, Performance, or RSI have used Marjam's proprietary information to benefit their respective businesses.[4]

### Marjam's Complaint

On December 6, 2011, Marjam commenced suit against Defendants.   Marjam has asserted antitrust claims against Firestone, Performance, and RSI for violations of Sections 13(a) and (d) of the Robinson-Patman Act (the "RPA"), 15 U.S.C. § 13 (Counts One and Three, respectively), and against Performance, RSI and Allied for violating Section 13(f) of the RPA (Count Two).   Marjam has also asserted a breach of fiduciary duty claim against Golden and an unfair competition claim against Firestone, Performance, RSI and Allied (Count Four).  In addition, Marjam has asserted a claim against Golden for breach of his Employment Agreement (Count Five) and a claim against Firestone, Performance, RSI and Allied for tortuously inducing that breach (Count Six).[5]  In response to Marjam's pleading, Defendants have filed three separate 12(b)(6) motions to dismiss.

## II. DISCUSSION

### A.  Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.

---

[4] Marjam does set forth specific instances in which it lost customers to non-parties ABC and Bradco after Firestone terminated Marjam's Distributorship.  (Compl. ¶ 83.)
[5] Marjam has voluntarily withdrawn its Breach of the Implied Covenant of Good Faith and Fair Dealing claim against Firestone (Count Seven).  *See* Marjam's Opp'n Br. 36, ECF No. 25.

The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S. at 556).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record.  *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

6

### B.  Analysis

### (a)     Marjam's Robinson-Patman Act Claims

The Robinson-Patman Act ("RPA") amends Section 2 of the Clayton Antitrust Act. *Palmer News, Inc. v. ARA Services, Inc.*, 476 F.Supp. 1176, 1181 (D. Kans. 1979). For purposes of this Opinion, it is sufficient to note that generally speaking, the RPA prohibits discriminatory pricing of similar goods when such pricing injures competition. *Am. Academic Suppliers, Inc. v. Beckley-Cardy, Inc.*, 699 F. Supp. 152, 154 (N.D. Ill. 1988).  *See also Volvo Truck North America, Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175 (2006) (setting forth the history and purposes of the RPA).

### (i) Marjam's §§ 13 (a) and (d) Claims

In Counts One and Three, Marjam alleges that Firestone, Performance, and RSI violated RPA §§ 13(a) and (d), respectively.  § 13(a) speaks to overt price discrimination, and states, in pertinent part, that:

> "It shall be unlawful for any person engaged in commerce, . . . either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them." [6]

---

[6] RPA price discrimination claims generally fall into three categories: (1) primary line price discrimination, in which a seller's price discrimination harms competition with the seller's competitors; (2) secondary-line price discrimination, in which a seller's discrimination impacts competition among the seller's customers, *i.e.*, the favored purchasers and disfavored purchasers, and; (3) tertiary-line violations, which occur when the seller's price discrimination harms competition between customers of the favored and disfavored purchases who are not direct competitors.  *United Magazines Co. v. Murdoch Magazines Distribution, Inc.*, 353 F. Supp. 2d 433, 447 (S.D.N.Y. 2004).  This case raises a claim of secondary-line price discrimination.

15 U.S.C. § 13(a).  *See also Volvo Trucks*, 546 U.S. at 177 (2006) *and Feesers, Inc. v. Michael Foods, Inc.*, 498 F.3d 206 (3d Cir. 2007) (setting forth the elements of a § 13(a) claim).

Furthermore, it should be noted that defendants who do not "control[] the price or terms of sale that the plaintiff alleges are discriminatory" cannot be liable under § 13(a) because "[w]ithout such control, a person cannot be said to 'discriminate in price.'" *United Magazines Co. v. Murdoch Magazines Distribution, Inc.*, 353 F. Supp. 2d 433, 447 (S.D.N.Y. 2004) *aff'd sub nom. United Magazine Co., Inc. v. Curtis Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008).

§ 13(d) supplements § 13(a)'s ban on overt price discrimination by prohibiting sellers from paying for promotional services for some buyers while allowing other buyers to pay for those services themselves.  *P. Lorillard Co. v. FTC*, 267 F.2d 439, 443 (3d Cir. 1959).  Thus, under § 13(d), a supplier cannot "grant advertising or other sales promotional allowances to one 'customer' who resells the supplier's 'products or commodities' unless the allowances are 'available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.'" [7] *F.T.C. v. Fred Meyer, Inc.*, 390 U.S. 341, 343 (1968).

In this case, Marjam alleges the following: that Firestone sold identical products to Marjam at higher prices than it did to Marjam's direct competitors; that Firestone offered promotional allowances and rebates to Marjam's direct competitors which it did not offer

---

[7] More precisely, 15 U.S.C. § 13(d) states:
"It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

to Marjam; that as a result of Firestone's behavior, Marjam became unable to compete with its direct competitors in sales of Firestone Products to third parties; and that ultimately, Firestone's actions have decreased the competition for sales of Firestone Products in certain geographic markets.  On these facts, the Court finds that Marjam has sufficiently alleged its § 13(a) and § 13(d) claims against Firestone.  Accordingly, Firestone's motion to dismiss Counts One and Three will be **DENIED**.  *See, e.g., En Vogue v. UK Optical Ltd.*, 843 F. Supp. 838, 845 (E.D.N.Y. 1994) (§ 13(a) price claim sufficiently pled); Ann M. Finneran, The Distinction Between the Scope of [§ 13(a)] and [§§ 13(d) and (e)] of the [RPA], 83 Mich. L. Rev. 1584, 1585 (1985) (it is an open question whether the same conduct can be challenged under both §§ 13(a) and 13(d) (*citing FTC v. Fred Meyer*, 390 U.S. at 343-44 (1968)).

However, because Marjam has failed to plead facts which suggest that any other party, including Defendants RSI and Performance, had any control over the prices and promotions Firestone offered to Marjam or had any input in Firestone's decision to terminate Marjam's Distributorship, there are no facts which support Marjam's claim that Performance and RSI are liable under § 13(a) and 13(d).  Accordingly, Performance and RSI's motion to dismiss Counts One and Three will be **GRANTED**.

### (ii) Marjam's § 13 (f) Claim

In Count Two, Marjam alleges that Allied, Performance, and RSI violated § 13(f) of the RPA.  15 U.S.C. § 13(f) is aimed at buyers, rather than sellers, and states that:

> . . . (i)t shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.

15 U.S.C. § 13(f).

As currently pled, there are no facts which suggest that Allied, Performance, or RSI ever induced or received discriminatory prices for Firestone Products, much less that any of those actions were knowingly committed.  Accordingly, Marjam has failed to state a § 13(f) claim against Allied, Performance, or RSI and those Defendants' motions to dismiss Count Two will therefore be **GRANTED**.

**(b) Marjam's State Law Claims**

In addition to its RPA claims, Marjam has alleged several causes of action arising under New Jersey law, all of which stem from Defendant Charles Golden's alleged disclosure of Marjam's proprietary business information.

**(i) Marjam's Claims Stemming from Golden's Breach of His Employment Agreement**

Counts Five and Six arise out of Golden's alleged breach of an "executed" Employment Agreement under which Golden agreed "that following the termination of his employment at Marjam, he would not disclose Marjam's confidential and proprietary business and customer information, or utilize such information to compete with Marjam." (Compl. ¶¶ 52.)   More precisely, in Count Five, Marjam asserts a claim against Golden for "Breach of Employment Agreement."  And in Count Six, Marjam asserts a claim against Firestone, Performance, RSI, and Allied for "Tortious Interference and Inducement of Breach of [Golden's Employment Agreement]."

In response, Defendants Allied and Golden have supplied the Court with a "copy of Charles Golden's **unexecuted** Employment Agreement with Marjam." (Declar. of

10

Michael J. Hahn, Esq., ECF No. 18-2) (emphasis added.)  Marjam has not disputed the authenticity of that document.  And thus, based on the undisputedly authentic documents presented to the Court, there is no executed Employment Agreement for Golden to be in breach of.[8]  Nor is there an executed Employment Agreement for Firestone, Performance, RSI, or Allied to have induced Golden to breach.  Accordingly, Defendants' motions to Dismiss Counts Five and Six will be **GRANTED**.

### (ii) Marjam's Breach of Fiduciary Duty and Unfair Competition Claims

In Count Four, Marjam asserts a claim against Golden, Firestone, Performance, RSI, and Allied for "Breach of Fiduciary Duty and Unfair Competition."  While pled as one claim, Count Four is more appropriately broken down into a breach of fiduciary duty claim against Golden and an unfair competition claim against Firestone, Performance, RSI, and Allied.

<u>Marjam's Breach of Fiduciary Duty Claim</u>

Under New Jersey law, an employee has a duty to not act contrary to his employer's interest, and cannot take affirmative steps to injure the employer's business while employed.  *Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 302, 305 (2001) (employee defendants breached duty of loyalty by secretively collecting protected information from plaintiff employer's files while still employed to assist in their formation of a competitive business upon their resignation).

---

[8]   At this time, the Court takes no position on the enforceability of the terms of the unsigned Employment Agreement.

11

In this case, Marjam alleges that Golden, while still employed with Marjam, compiled proprietary information, including Marjam's proprietary business, sales, customer, orders and pricing information relating to the sale of Firestone Products by Marjam to its customers, including in the Philadelphia market.  Marjam further claims that Golden is now sharing that information with Marjam's direct business competitors to Marjam's detriment, including with Allied, Golden's current employer and the company that directly competed with Marjam in the Philadelphia market.  (Compl. ¶ 123.)  On these facts, the Court finds that Marjam has sufficiently pled its breach of loyalty claim against Golden.  Accordingly, Golden's motion to dismiss Count Four will be **DENIED**. *See, e.g.*, *P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*, CIV.A.04-4554 JAG, 2007 WL 708978, at *13 (D.N.J. Mar. 5, 2007) (breach of duty of loyalty claim sufficiently pled where plaintiff employer alleged that during the course of his employment, defendant employee accessed employer's files to obtain trade secrets and confidential and proprietary information for purposes contrary to his employer's interests.)

<u>Marjam's Unfair Competition Claim</u>

Under New Jersey law, the tort of unfair competition generally consists of the misappropriation of one's property which has some sort of commercial or pecuniary value.  *See Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 600 (D.N.J. 2000) (*citing New Jersey Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J.Super. 411, 427–28 (Ch. Div. 1976)).

12

In this case, Marjam asserts that Firestone, Performance, RSI, and Allied "participated in, facilitated, assisted, cooperated with Golden for their own pecuniary benefit and to the detriment of Marjam."  (Compl. ¶ 123.)   Although Marjam has pled some facts which suggest that some of those parties may have gained access to some of Marjam's proprietary information, Marjam has not plead any facts which suggest that Firestone, Performance, RSI, or Allied has reaped any financial benefit from the use of Marjam's proprietary information or has misappropriated that information in any other way.  Moreover, with the exception of Allied – for whom Golden is now employed – Marjam fails to plead facts suggesting any kind of a relationship between Golden and Firestone, Performance, or RSI which would facilitate Golden's sharing of Marjam's proprietary information.  In short, as pled, there are insufficient facts to support Marjam's unfair competition claim against Firestone, Performance, RSI, or Allied. Accordingly, Defendants' motions to dismiss Count Four will be **GRANTED** as to those Defendants. *See Moose Mountain Toymakers Ltd. v. Majik Ltd., LLC*, Civ. No. 10-4934 (DMC)(JAD), 2011 WL 3625057, at *4 (D.N.J. Aug. 12, 2011) (citations omitted) (motion to dismiss granted where unfair competition claim amounted to nothing more than a conclusory and formulaic recitation of that cause of action).

## III. CONCLUSION

For the reasons stated above, Defendants' Rule 12(b)(6) motion are **GRANTED** in part and **DENIED** in part.  Specifically, Counts One and Three are **DISMISSED** as against Performance and RSI, but **REMAIN** as against Firestone; Count Four is **DISMISSED** as against Firestone, Performance, RSI, and Allied, but **REMAINS** as

13

against Charles Golden; Counts Two, Five, and Six are **DISMISSED** in their entirety;

Count Seven is **DISMISSED** as withdrawn by Plaintiff.  An appropriate order follows.


/s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**


**Date: November 30, 2012.**

14