UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARJAM SUPPLY COMPANY,**<br><br>        Plaintiff,<br><br>   v.<br><br>**FIRESTONE BUILDING PRODUCTS COMPANY, LLC, FIRESTONE DIVERSIFIED PRODUCTS, LLC, ALLIED BUILDING PRODUCTS CORP., PERFORMANCE ROOFING ASSOCIATES, INC., ROOFING SPECIALTIES, INC., and CHARLES "CHUCK" GOLDEN**<br><br>        Defendants. | Civ. No. 11-7119 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      In this antitrust litigation brought under the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and (d), Plaintiff Marjam Supply Company ("Marjam") alleges that its former supplier, Defendant Firestone Building Products Company, LLC ("Firestone"), embarked on a campaign of price discrimination "designed and intended to destroy, if not totally eliminate Marjam's competitive position in the Firestone Products and building materials markets . . . ." Compl. ¶ 71, ECF No. 1. In a parallel arbitration brought under Indiana common law, Firestone alleges that Marjam owes money on outstanding bills. Arguing that the arbitration would usurp this Court's antitrust decisions, Marjam moves for a stay pursuant to Federal Rule of Civil Procedure 65. There was no oral argument. Fed. R. Civ. P. 78(b). Because the arbitration will not prejudice this Court's antitrust rulings, the motion is **DENIED**.

1

Marjam filed the Complaint in this litigation on December 6, 2011. Of the seven counts in its Complaint, five were directed at Firestone. Counts I and III allege violations of federal law, specifically §§ 13(a) and (d) of the Robinson-Patman Act. The other counts allege violations of state law. Count IV alleges unfair competition, Count VI alleges "tortious interference and inducement of breach of contract," and Count VII alleges breach of the implied covenant of good faith and fair dealing. After Firestone moved to dismiss, Marjam withdrew Count VII. On November 30, 2012, the Court dismissed the state law claims but not the federal antitrust claims brought under the Robinson-Patman Act.

Firestone's three count arbitral demand alleges breach of contract, account stated, and unjust enrichment and quantum meruit. Marjam argues that a stay of the arbitration is justified by the "permeation doctrine." "The permeation doctrine permits a federal court to stay arbitration in order to preserve its exclusive jurisdiction over non-arbitrable federal claims . . . ." *D.C. Taylor, Co. v. Dynamit Nobel of America, Inc.*, 558 F. Supp. 875, 880 (N.D. Ill. 1982) (citing *Applied Digital Tech., Inc. v. Continental Cas. Co.*, 576 F.2d 116 (7th Cir.1978); *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638 (7th Cir. 1981)). Under the permeation doctrine, a stay is warranted where arbitration will "invade" the Court's "sole right to decide the ultimate issues in the antitrust claims." *Dynamit*, 558 F. Supp. at 881. Though it appears that the United States Court of Appeals for the Third Circuit has yet to recognize this doctrine, the Court will assume that it is good law in this District. The Court will also assume, along with the parties, that federal antitrust claims are non-arbitrable.

In deciding permeation, the Court undertakes a "careful scrutiny of the substance of the antitrust claims, the arbitrable issues, and the other facts surrounding the parties' dispute." *Id.* First, to resolve the antitrust claims, the Court will have to determine whether Firestone engaged in price discrimination favoring Marjam's competitors. *See* 15 U.S.C. §§ 13(a), (d). Second, to resolve the arbitrable issues, an arbitrator will have to decide whether Marjam accepted goods without remitting payment. "The issues in the two proceedings, arbitration and the present suit, are dissimilar enough that the arbitrator could avoid deciding the ultimate antitrust issues." *Dynamit*, 558 F. Supp. at 883. Marjam fails to identify "other facts surrounding the parties' dispute," *id.* at 881, that change the calculus. A stay is unwarranted under the permeation doctrine.

Marjam's argument the contrary fails to persuade. Marjam maintains that an arbitrator "most certainly will have to inquire into the circumstances relating to the sales in question and make critical determinations concerning pricing and other issues touching on Marjam's antitrust claims." Pl.'s Br. 16, ECF No. 40. What those "other issues" are Marjam does not say. Moreover, it is unclear what "critical determinations concerning pricing" an arbitrator would make. Even if the

arbitral decision has some small collateral estoppel effect on the Court's antitrust analysis, it will not "foreclose" Marjam's antitrust claims.  *See Dynamit*, F. Supp. at 882.

Additionally, Marjam argues that a stay should issue because the claims Firestone wishes to arbitrate qualify as compulsory counterclaims under Federal Rule of Civil Procedure 13(a). Pl.'s Br. 26. The Court knows of no authority requiring it to stay an arbitration based on Rule 13(a).  On the contrary, strong federal policy favoring arbitration weighs against a stay.  As the Third Circuit recognized years ago in a slightly different context:

> If one of the disputing parties could, by filing a complaint alleging a grievance outside the scope of the agreement for arbitration, force his opponent to by-pass arbitration and assert counterclaims as to controversies otherwise arbitrable, the desired intent and purpose of arbitration agreements could be effectively frustrated.

*Bristol Farmers Market and Auction Co. v. Arlen Realty & Devel. Corp.*, 589 F.2d 1214, 1221 (3d Cir. 1978) (quoting *Local 11, IBEW v. G. P. Thompson Electric, Inc.*, 363 F.2d 181 (9th Cir. 1966)).

Before concluding, the Court must address two remaining issues.  First, Marjam argues that a stay is proper under Indiana law, which governed the Distributor Agreement between Marjam and Firestone.  As Indiana appears to apply the federal permeation doctrine, this argument fails.  *See Underwriting Members of Lloyds of London v. United Home Life Ins. Co.*, 549 N.E.2d 67, 71 (Ind. Ct. App. 1990) (applying Seventh Circuit permeation doctrine).  Second, Marjam argues that it will suffer irreparable harm in the absence of a stay.  Usually, courts consider irreparable harm before issuing an injunction.  *See, e.g.*, *N.J. Retail Merch's Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012).  They also consider likelihood of success on the merits, the balance of harms, and whether injunctive relief will serve the public interest.  *Id.*  It does not appear that this traditional test applies in permeation doctrine cases.  *See Dynamit*, 558 F. Supp. at 880-883; *cf. In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109 (3d Cir. 2012) (staying arbitration without analyzing traditional preliminary injunction factors).  Assuming that the traditional test applies, and assuming a likelihood of success on the merits, Marjam still cannot demonstrate that arbitration will cause irreparable harm.  An arbitrator will do exactly what a court would do: resolve Firestone's claims.  Furthermore, Marjam cannot demonstrate that the public interest favors a stay.  Nor can it demonstrate that the balance of harms weighs in its favor.  While the arbitration will involve some duplication of effort and resources, that cuts both ways. Accordingly, even if the

Court had to apply the traditional preliminary injunction analysis, it would not rule in Marjam's favor.

## CONCLUSION

"[A]ny overlap between the antitrust issues and the arbitration claims is too insignificant to constitute permeation or to justify a stay of arbitration." *Dynamit*, 558 F. Supp. at 883. Accordingly, the Court will **DENY** Marjam's motion and allow the arbitration to proceed.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 7, 2013**