NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARJAM SUPPLY COMPANY,** | Docket No.: 11-cv-7119 |
| Plaintiff, | |
| v. | OPINION |
| **FIRESTONE BUILDING PRODUCTS COMPANY, LLC; FIRESTONE DIVERSIFIED PRODUCTS, LLC; GENFLEX ROOFING SYSTEMS, LLC; ABC SUPPLY CO., INC.; BRADCO SUPPLY CORP.; S & K DISTRIBUTION, LLC, D/B/A NEW CASTLE BUILDING PRODUCTS; AND CHARLES "CHUCK" GOLDEN,** | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

  This is an action for secondary-line pricing discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13.  The goal of the Robinson-Patman Act is to curtail pricing discrimination in favor of large-quantity buyers.  *Automatic Canteen Co. of Am. v. Fed. Trade Comm'n*, 346 U.S. 61, 64 (1953).

  The instant matter comes before the Court by way of two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  American Builders & Contractors Supply Co., Inc. filed the first motion.  American Builders & Contractors Supply Co., Inc. is an entity that resulted from the merger of improperly named Defendants Bradco Supply Corp. and ABC Supply Co., Inc.  (the "ABC Defendants").  S & K Distribution LLC, d/b/a New Castle Building Products ("New

1

Castle") filed the second motion to dismiss. In Count Three of the Amended Complaint, Marjam alleges that the ABC Defendants and New Castle (collectively, "Moving Defendants") knowingly induced or received illegally favorable discrimination in prices from co-Defendants Firestone Building Products Co., LLC ("FBPC"), Firestone Diversified Products, LLC ("FDP"), and Genflex Roofing Systems, LLC ("Genflex") on Firestone and Genflex Products, in violation of the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and (f). (Amended Complaint at ¶¶ 133-146). For the reasons set forth below, the motions are granted.

## I. BACKGROUND

The central defendants in this case are FBPC, FDP, and Genflex (collectively "Firestone"). All three of these Defendants are subsidiaries of Bridgestone Corp. (Amended Complaint at ¶¶ 11-16).

Firestone promotes itself as being the leading single source manufacturer of commercial roofing systems and products within the United States, providing a full line of thermoplastic, asphalt and metal roofing systems, polyiso insulation ("ISO"), and related accessories (the "Firestone Products") to contractors, building owners, and specifiers for over thirty (30) years. Firestone operates manufacturing facilities throughout North America. (Amended Complaint at ¶ 18). Firestone markets and sells the Firestone Products primarily through so-called "independent" manufacturer representatives and independently owned distributors, each being contractually assigned to a specific geographic area of responsibility or territory. (Amended Complaint at ¶ 21).

Plaintiff Marjam Supply Company was one of Firestone's distributors. Marjam is a building materials distributor and supplier with 35 sales and warehouse facilities in twelve states throughout the Northeast and Southeast of the United States. (Amended Complaint at ¶ 9). Between 1997 and 2011, Marjam's revenue from the sales of Firestone Products ranged from a low of $576,340.85 in 1997, to a high of $7,512,067.13 in 2007. (Amended Complaint at ¶ 72).

The ABC Defendants and New Castle were also independent distributors of Firestone Products. They competed directly with Marjam in the sale of Firestone Products. (Amended Complaint at ¶¶ 43-55). ABC Supply Co. had 455 physical locations in 45 states and the District of Columbia and annual sales of over $4 billion. (Amended Complaint at ¶ 45). Plaintiff alleges that ABC Supply Co. is "the largest wholesale distributor of roofing products within the United States." (Amended Complaint at ¶ 43). Bradco had over 130 locations in 29 states. (Amended

Complaint at ¶ 50). New Castle is "a leading, full service distributor of building supplies serving the Northeastern United States." (Amended Complaint at ¶ 3). Plaintiff alleges that the Moving Defendants sought to have Marjam's distributorship terminated because they viewed Marjam as a "price cutter." (Amended Complaint at ¶ 75).

Between 1997, when Marjam became a Firestone Products distributor, and 2007, Marjam's sales of Firestone products grew by more than a factor of 12.[1] (Amended Complaint at ¶ 72). Sales decreased somewhat in 2008 and 2009 and then fell precipitously in 2010 and 2011. (*Id.*). Firestone terminated Marjam's distributorship effective December 31, 2011. (Amended Complaint at ¶ 73).

Marjam alleges that its sales of Firestone Products fell suddenly because Marjam became unable to compete with the prices that New Castle and the ABC Defendants were offering Marjam's customers. (Amended Complaint at ¶¶ 95-97). In some cases Marjam's former customers told Marjam that they began purchasing from the ABC Defendants or New Castle because those distributors offered lower prices on the Firestone Products. (Amended Complaint at ¶ 95). According to the Complaint, the reason that the ABC Defendants and New Castle began offering customers lower prices is because Firestone began offering New Castle and the ABC Defendants deals, incentives, and discounts that Firestone did not offer to Marjam. These included "off-invoice" discounts. (Amended Complaint at ¶ 87).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief

---

[1] There is a minor discrepancy in the Amended Complaint, making it difficult to tell whether Marjam first became a Firestone distributor in 1997 or 1999. The discrepancy is not material to the disposition of this motion.

3

above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

"[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court recognized that in antirust matters the district court "must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558. "[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Id.* But even though an antitrust case may require more factual allegations to state a claim than a simpler case, this does not mean the plausibility standard in an antitrust case functions more like a probability requirement. *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). In an antitrust case, "Rule 8's pleading standard applies [with] the same level of rigor [as] in all civil actions." *Id.*

### III. ANTITRUST STANDING

The ABC Defendants argue that Plaintiff has no antitrust standing because it failed to establish that the ABC Defendants' behavior caused an antitrust injury. The argument is not convincing. In *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993), the Third Circuit stated:

> "[T]he focus of the doctrine of 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a *proper party* to bring a private antitrust action." *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 535 n. 31 (1983). . . . In *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 (1977), the Supreme Court set forth a two-part test for antitrust standing that has recently been applied by our court. *See International Raw Materials, Ltd. v. Stauffer*

4

*Chem. Co.*, 978 F.2d 1318, 1327-28 (3d Cir. 1992). To establish antitrust standing a plaintiff must show both: 1) harm of the type the antitrust laws were intended to prevent; and 2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful. *Id.*

The primary concern of antitrust laws, including the Robinson-Patman Act, is interbrand competition, as opposed to the protection of individual competitors. *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 181 (2006). "[A]ntitrust plaintiffs have not been held to an unduly rigorous standard of proving antitrust injury." *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1273 (3d Cir. 1995). The pleadings need only create a reasonable inference of an antitrust injury. *Precision Printing Co. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 354 (W.D. Pa. 1998) (*citing Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1540 (3d Cir. 1990)).

The causation element is also not unduly rigorous. The plaintiff must establish that the defendant's antitrust violations contributed to some extent to plaintiff's injuries. *Precision Printing Co. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 354 (W.D. Pa. 1998).

In this case, the Amended Complaint alleges that practices which violated antitrust laws resulted in Marjam's loss of its Firestone distributorship, thereby reducing competition among distributors of the Firestone distributors. Thus Marjam establishes the antitrust injury and causation elements of antitrust standing.

## IV.   ROBINSON-PATMAN ACT

The Robinson-Patman Act of 1936 is an amendment to Section 2 of the Clayton Antitrust Act of 1914, 15 U.S.C. § 13, which in turn, is one of the main pieces of the United States antitrust statutory scheme. *See Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 43 (1948); *Palmer News, Inc. v. ARA Services, Inc.*, 476 F. Supp. 1176, 1181 (D. Kans. 1979); Jeffery D. Schwartz, *The Use of the Antitrust State Action Doctrine in the Deregulated Electric Utility Industry*, 48 Am. U. L. Rev. 1449 n. 28 (1999) (*citing* Lawrence Anthony Sullivan, Handbook of the Law of Antitrust 13 (1977)). The original Clayton Act had provisions against price discrimination that proved to be inadequate. *Automatic Canteen Co. of Am. v. Fed. Trade Comm'n*, 346 U.S. 61, 64 (1953). In particular, the original Clayton Act had "an express exemption of price discrimination in the sales of different quantities of like goods." *Id*. This exemption "was interpreted as leaving quantity-discount sellers free to grant discounts to quantity buyers that exceeded any cost savings in

selling such goods to buyers." *Id.*

> The legislative history of the Robinson-Patman Act makes it abundantly clear that Congress considered it to be an evil that a large buyer could secure a competitive advantage over a small buyer solely because of the large buyer's quantity purchasing ability. The Robinson-Patman Act was passed to deprive a large buyer of such advantages except to the extent that a lower price could be justified by reason of a seller's diminished costs due to quantity manufacture, delivery or sale, or by reason of the seller's good faith effort to meet a competitor's equally low price.

*Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. at 43.

Count Three of the Amended Complaint alleges that the moving Defendants violated Sections 13(a) and 13(f) of the Robinson-Patman Act, however in the Opposition Brief, it is clear that Marjam is only pursuing the 13(f) claim against the Moving Defendants.  Section 13(a) claims are generally brought against sellers, and the existence of an underlying 13(a) claim is a requisite element of a 13(f) claim against a buyer.  *Great Atlantic & Pacific Tea Co. v. Fed. Trade Comm'n*, 440 U.S. 69, 76 (1979).  This Court previously held that Plaintiff had stated a Section 13(a) violation claim against Firestone and sees no reason to revisit this issue.  *Marjam Supply Co. v. Firestone Bldg. Products Co.*, 2012 WL 6005709, at *4 (D.N.J. Nov. 30, 2012).  Therefore, the analysis of the Section 13(f) claim against the Moving Defendants can continue.

Section 13(f) of the Robinson-Patman Act states, "It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."  15 U.S.C. § 13(f).  Section 13(f) of the Robinson-Patman Act "does not reach all cases of buyer receipt of prohibited discrimination in price."  *Automatic Canteen*, 346 U.S. at 71.  "*Any* difference in the prices of similar goods is, of course, price discrimination.  To be forbidden, however, the discrimination must be *illegal.*"  *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983) (internal citations omitted) (emphasis in original).  Section 13(f) of the Robinson-Patman Act limits itself to cases of "knowing receipt" of discriminatory prices.  *Automatic Canteen*, 346 U.S. at 71.  Section 13(f) is not meant to forbid a buyer from bargaining for the best price that it can get.  *Id.*  *See also Gorlick Distribution Centers, LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013).

Plaintiff bears the burden of alleging that the buyer knew both that "(1) he was

receiving a lower price than a competitor and (2) the seller would have 'little likelihood of a defense' for offering that price." *Gorlick Distribution Centers*, 723 F.3d at 1022 (*quoting Automatic Canteen*, 346 U.S. at 73). Knowledge may be actual knowledge or constructive knowledge based on "trade experience." *Automatic Canteen*, 346 U.S. at 80. At a minimum, the plaintiff's burden requires allegations that a price differential favoring the defendant buyer exceeded any cost savings the seller may have enjoyed in sales to the favored buyer. *Rutledge v. Elec. Hose & Rubber Co.*, 327 F. Supp. 1267, 1277 (C.D. Cal. 1971) (*citing Automatic Canteen*, 346 U.S. at 62) *aff'd*, 511 F.2d 668 (9th Cir. 1975). Other defenses include meeting competition, *Fed. Trade Comm'n v. Sun Oil Co.*, 371 U.S. 505 (1963), and changing circumstances, *Comcoa, Inc. v NEC Telephones, Inc.*, 931 F.2d 655 (10th Cir. 1991).

In the Amended Complaint, Marjam makes the following allegations that it claims demonstrate it has met the burden of plausibly alleging the Moving Defendants' knowledge that they received illegal discrimination in pricing:

> Bradco was unhappy with Firestone's incentive program for 2009, so it solicited Firestone to eliminate or reduce "gates" so that it could achieve the same incentive dollars it had made the prior year, even though business was way down. In response, Firestone gave Bradco "additional incentives" including an additional 1% on ISO, and further, agreed to provide Bradco with "buys" or "deals" on other Firestone Products, all in an effort to "offset some of the downside on the 2009 rebate program." . . . Bradco received significant incentive rebate programs from Firestone, topping out at 8% [on certain Firestone Products]. At the same time, Marjam's rebate for the identical products topped out at 5%, which, given the profit margins on these products, prevented Marjam from competing with Bradco in the resale of same. Similarly, at the same time that Bradco was afforded a 4% rebate on its purchases of ISO. Marjam's rebate was zero.
>
> In addition, and throughout the relevant period, Bradco knowingly induced and/or knowingly received and benefited from "spiffs," including specific deals which were made to Bradco on particular items. The promotional pricing afforded to Bradco in connection with these "spiffs" was never afforded to Marjam.
>
> In addition, Firestone, responding to Bradco's demands for better incentives on its purchases of Firestone Products, set "soft gates" for Bradco, which Firestone and Bradco knew were easily obtainable based

>on Bradco's prior performance.
>
>Similarly, ABC, which acquired Bradco in 2010, also knowingly induced and/or knowingly received discriminatory pricing including incentive rebates topping out at 8%, while Marjam's correlating incentive rebates were significantly less.
>
>New Castle, likewise knowingly induced and/or knowingly received discrimination in price in the form of rebates as well as extended payment terms better than the terms which were granted to Marjam. Thus, while Marjam's payment terms from Firestone were 2% 60 days/net 6l days, New Castle was afforded payment terms of anywhere from 90-150 days, which allowed New Castle to sell more product without having to finance those sales through its banks.
>
>New Castle also knowingly induced and/or knowingly received other "exceptions," including the inclusion of certain Firestone Products in Firestone's rebate program to New Castle, which products were not included in Marjam's rebate program.

(Amended Complaint at ¶¶ 135-141).

The question before the Court is whether these allegations demonstrate that the Moving Defendants had knowledge that: 1.) Firestone charged them lower prices than Firestone charged Marjam; and 2.) Firestone had no justifiable reason for offering the Moving Defendants these prices. *See Gorlick Distribution Centers*, 723 F.3d at 1022. Marjam has specified the types of discounts that Firestone gave the Moving Defendants, however, recounting these discounts does not alone raise a plausible inference that Plaintiff knew the discounts to be illegal. In fact, nowhere does the Amended Complaint allege that the Moving Defendants had any knowledge about the prices Firestone charged Marjam, nor does it explain why the Moving Defendants would have reason to know that the discounts it received were unjustifiably low.

Plaintiff urges this Court to follow *Flash Electronics, Inc. v. Universal Music & Video Distribution Corp.*, 312 F. Supp. 2d 379 (E.D.N.Y. 2004) and *Hygrade Milk & Cream Co. v. Tropicana Products, Inc.*, 1994 WL 38549 (S.D.N.Y. Feb. 4, 1994) At the outset, it should be noted that both these cases were decided before *Twombly* or *Iqbal* commanded the court search complaints for plausibility, as opposed to mere possibility, when analyzing a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678 (*citing*

*Twombly*, 550 U.S. at 556). More importantly, the two cases have small but critical factual distinctions.

In *Flash Electronics v. Universal Music & Video Distribution Corp.*, the court pieces together an inference that the defendant buyers knew Universal treated them as "preferred" buyers. 312 F. Supp. 2d at 401. The *Flash Electronics* plaintiff alleged that the two defendant buyers jointly controlled 75% of the market and that for a period of several years, the two defendant buyers had been pressuring Universal to "make them exclusive distributors of Universal [p]roducts in the U.S. rental market at the exclusion of Plaintiffs." *Id.* at 401 (alterations in original). These facts together indicate cognizance that the prices the defendant buyers commanded from Universal were adverse to interbrand competition. *See id.* at 400-01. In Marjam's case, the Amended Complaint does specify that the ABC Defendants are the largest distributors of roofing products in the country. However, the Amended Complaint stops short of explaining how the Moving Defendants would have known that the discounts they received were illegal.

In the analysis of *Hygrade Milk*, the court decided that the buyer defendants were "reasonably cognizant" of the illegality of the discounts based upon two facts. 1994 WL 38549, at * 3 (*citing Automatic Canteen*, 346 U.S. at 79-80). First, the court determined that the defendant buyers were sophisticated enough to know that the prices they received were illegal. *Id.*, at * 3. Second, the buyer defendants allegedly over-reported sales to the manufacturer-seller. Marjam, like the *Hygrade Milk* plaintiffs, does allege facts demonstrating that the Moving Defendants are sophisticated, however, Marjam makes no allegations of dishonesty that suggest cognizance of illegality.

In both *Hygrade Milk* and *Flash Enterprises*, there was some element in addition to the size and sophistication of the defendant buyers. That distinction is critical. The most important consideration in assessing whether the Complaint sufficiently alleges the knowledge element of a Section 13(f) claim should be whether the facts plead, when accepted as true, demonstrate more than attempts to bargain for lower prices. The Complaint must state some factual theory by which the Defendants knew or should have known that they were receiving prices that were below the manufacturer's cost. Otherwise, we would contradict the policy that a buyer should be free to bargain without undue concern that its bargaining efforts will give rise to an inference of knowingly inducing price discrimination. *See Automatic Canteen*, 346 U.S. at 63, 72; *Gorlick Distribution Centers, LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013). The mere existence of a buyer defendant's sophistication and successful negotiation of better prices do not lead to the inference that the Moving Defendants did anything other than bargain for

the best legally justifiable price.

## V. LEAVE TO AMEND THE AMENDED COMPLAINT

Marjam asks that it be granted leave to amend the Amended Complaint. Marjam states in a footnote to its Opposition Brief that it has become aware of an email correspondence between Firestone and New Castle in which Firestone told New Castle that the discounts New Castle requested were "more than double budgeted amounts and range[] from 1% - 4% more than distributors with multiple locations" – distributors like Marjam. Opposition Brief at 40. While we make no determination about whether this would be an allegation sufficient to allege the lacking knowledge element of a Section 13(f) claim, it does appear to be a step in that direction. Leave to amend a complaint should generally be granted liberally. *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 519 (E.D. Pa. 2006) (*citing Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990)). Considering the policy of granting leave to amend a complaint liberally, along with the real possibility that factual fortification of the Amended Complaint could remedy the lacking element of knowledge in the Section 13(f) claim, the Court will grant Plaintiff leave to file a Second Amended Complaint in the order accompanying this opinion.

## VI. CONCLUSION

For the foregoing reasons, the Moving Defendants' motions to dismiss are granted. Dismissal is without prejudice. Plaintiff may file a Second Amended Complaint within 45 days of the order following this opinion.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:** November 6**,** 2014