UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARJAM SUPPLY CO.,<br><br>    Plaintiff,<br><br>v.<br><br>FIRESTONE BUILDING PRODUCTS COMPANY, LLC, *et al.*,<br><br>    Defendants. | Civ. No. 2:11-cv-7119<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendants Firestone Building Products Company, LLC's, Firestone Diversified Products, LLC's, and GenFlex Roofing Systems, LLC's collective motion for summary judgment. ECF No. 188. For the reasons set forth below, the motion is **DENIED**.

I.    **BACKGROUND**

Plaintiff Marjam Supply Co. ("Marjam") brings this antitrust suit under Sections 2(a) and 2(d) of the Robinson-Patman Act, 15 U.S.C. § 13, *et seq.* ("Act"). Marjam is a building-materials distribution company. Defendants Firestone Building Products Company, LLC, Firestone Diversified Products, LLC, and GenFlex Roofing Systems, LLC (collectively, "Firestone") are manufacturers of building-construction materials, including those used for roofing. Until Firestone ended their relationship in October 2011, Marjam distributed Firestone's roofing materials in New York, New Jersey, Pennsylvania, and Delaware.

Marjam accuses Firestone of offering its roofing products to Marjam's competitors ("Favored Distributors")[1] at more favorable terms than those offered to Marjam through non-uniform rebate, discount, and financing programs. Op. at 3-4 (Nov. 30, 2012), ECF No. 38. Due to the disparate terms offered by Firestone, the Favored Distributors could allegedly offer Firestone's products to "Major Customers"[2] at lower prices than Marjam. *Id.* Marjam asserts it lost significant business to the Favored Distributors as a result. *Id.*

This Court previously granted-in-part and denied-in-part a motion to dismiss the claims against Firestone. *See id.* While dismissing much of the complaint, the Court allowed Marjam

---

[1] The "Favored Distributors" are ABC Supply Company, Inc.; Bradco Supply Corp. (ABC and Bradco merged in 2011); Allied Building Products Corp.; S&K Distribution, LLC d/b/a New Castle Building Products ("New Castle"); and J&S Supply Company.

[2] The "Major Customers" are All Seasons Commercial Roofing ("All Seasons"); Six G's Contracting; Hamada, Inc. ("Hamada"); Kraus Commercial Roofing; United Roofing Systems, Inc.; Roofers Inc./Tristate Roofers; and Hudecheck Roofing and Siding, Co.

1

to proceed on its Section 2(a) and 2(d) claims. *Id.* at 9. With the Court's leave, Marjam added GenFlex as a defendant via amended complaint. *See* Amend. Compl. ¶¶ 116-132, ECF No. 92. Presently before the Court is Firestone's (including GenFlex's) motion for summary judgment on Marjam's remaining claims against it (Counts One, Two, and Four). Firestone Mot. (Jan. 11, 2019), ECF No. 188.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FRCP 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citation omitted).

### B. Firestone's Motion for Summary Judgment

Firestone's numerous arguments for summary judgment fit into two broad categories: *(1)* Marjam cannot establish the requisite harm to competition and *(2)* even assuming it could, inter-brand competition negates any such harm. *See generally* Firestone Mot. Marjam counters each argument by citing record evidence. *See* Marjam Opp., ECF No. 189.

### C. Section 2(a) Claims

Section 2(a) of the Act states:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition . . . or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided*, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered.

15 U.S.C. § 13(a). A *prima facie* Section 2(a) claim requires four elements: "*(1)* that sales were made to two different purchasers in interstate commerce; *(2)* that the product sold was of the

same grade and quality; *(3)* that defendant discriminated in price as between the two purchasers; and *(4)* that the discrimination had a prohibited effect on competition." *Feesers, Inc. v. Michael Foods, Inc.*, 498 F.3d 206, 212 (3d Cir. 2007). The fourth element includes both a "competitive injury" (i.e., "a reasonable possibility that the price difference may harm competition") and an "antitrust injury" (i.e., "a causal connection between the price discrimination and actual damages suffered"). *Id.*; *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1273 (3d Cir. 1995).

Firestone primarily argues there is no genuine issue of material fact regarding whether Marjam suffered competitive or antitrust injuries (element four). Firestone also asserts there is no genuine issue regarding whether the products sold were "of the same grade and quality" (element two) and whether Firestone actually committed price discrimination (element three).

### 1. *Competitive Injury*

Firestone argues that Marjam cannot establish the fourth element of a Section 2(a) claim—that the price discrimination had a prohibited effect on competition (i.e., that the plaintiff suffered a "competitive injury"). Mot. at 8. Given Section 2(a)'s prophylactic purpose, to satisfy the competitive injury element, plaintiffs need only show "a *reasonable possibility* that the price difference may harm competition," not that it *actually* harmed competition. *Feesers*, 498 F.3d at 212 (brackets and citations omitted). Thus, plaintiffs may establish the competitive injury indirectly—by demonstrating substantial price discrimination over time (which evidences a *reasonable possibility* of harm)—or directly—through evidence of actual displaced sales (i.e., actual harm to competition). *Id.* at 216 (citations omitted). Here, Marjam does both.

#### a. *Direct Evidence of a Competitive Injury*

Direct proof of a competitive injury utilizes "direct evidence of displaced sales." *Id.* (citation omitted); *see also Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006) ("A hallmark of the requisite competitive injury . . . is the diversion of sales or profits from a disfavored purchaser to a favored purchaser."). Marjam points to two of its employees' depositions for such evidence: Joel Martin (a Marjam salesman responsible for Firestone products) and James Metcalf (Marjam's Product and Marketing Manager). Marjam Opp. at 58. Martin's deposition included the following soliloquy:

> Q: *Why did Marjam lose the business of Hamada?*
>
> A: We can only go off the costs that were given and price the customer.
>
> Q: I don't understand your answer.
>
> A: I don't understand what you're asking me for. You know--
>
> Q: Are you suggesting that if you met your competitors' pricing you'd be pricing below cost?
>
> A: Right. I don't know what my competitors are giving them. *I'm just being told that I'm high from my customer*.

Appx. to Sharon Decl., Ex. G, Martin Dep. at 69-70, ECF No. 189-6 (emphasis added). As to Metcalf, his deposition included the following:

3

> Q: So one of the customers that . . . appear is All Seasons Commercial Roofing?
>
> A: Um-hum, I know them.
>
> Q: Is that one of the customers that was lost?
>
> A: Yes.
>
> Q: Okay. Tell me *how it was that that customer was lost*.
>
> A: *The customer indicated to us that our pricing was not in line*. We continued to offer pricing and we lowered our pricing and lowered our pricing to points where we would have been out of business if we continued to take the business. We were able to confirm that *he was, in fact, and is, in fact, still buying that material . . . from New Castle Building Products*, also known as S&K Building Products. *And that was a customer that was doing as much as . . . [$]700,000 a year with us at peaks*.

Appx. to Sharon Decl., Ex. H, Metcalf Dep. at 147-149, ECF No. 189-6 (emphasis added); *see also* Metcalf Dep. at 108-109; 111-112; 151-157; 164; 198-202; 207-217.

Marjam argues this is sufficient to show a competitive injury, citing *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 253 (3d Cir. 1999). Marjam Opp. at 59-62. Firestone counters by arguing *Callahan* is distinguishable, and the Court should instead be guided by *Stelwagon Manufacturing Co. v. Tarmac Roofing Systems*, 63 F.3d 1267 (3d Cir. 1995). *See* Reply at 7, ECF No. 190.

In *Callahan*, the Third Circuit reversed a district court's grant of summary judgment on a beer distributor's Sherman Act claims. The district court had "concluded that the plaintiffs had not offered sufficient evidence of fact of damage, i.e., loss and causation in fact." Reversing, the Third Circuit held that the plaintiffs' agents' testimony "that they knew of customers who used to purchase [products] from them, but no longer did" was "admissible evidence of lost business." *Callahan*, 182 F.3d at 253. In reaching that holding, the Third Circuit distinguished *Stelwagon*: "In that case, the only evidence of actual loss, i.e., that customers stopped purchasing from the plaintiff, was the employees' reports that customers had said that they were no longer buying from the plaintiff because the plaintiff's competitors had lower prices." *Id.* at 252 (discussing *Stelwagon*, 63 F.3d at 1274). "Statements of a customer as to his reasons for not dealing with a supplier are admissible for . . . the purpose of proving customer motive, but not as evidence of the facts recited as furnishing the motives." *Id.* (citation and brackets omitted). Thus, in *Stelwagon*, the Third Circuit found that the plaintiffs failed to produce evidence of actual displaced sales. *Stelwagon*, 63 F.3d at 1274 (reversing district court because hearsay evidence was inadmissible to prove lost sales). But in *Callahan*—where the "plaintiffs themselves testified that they knew of customers who used to purchase beer from them, but no longer did"— the Third Circuit found sufficient "evidence of the fact of damage." *Callahan*, 182 F.3d at 253.

Firestone argues, like in *Stelwagon*, Marjam failed to present sufficient evidence of displaced sales. The Court agrees that Martin and Metcalf's descriptions of customers' out-of-court statements are inadmissible to prove actual diverted sales. *See id.* at 252; *see also* FRE 801(c), 802. The statements are, however, admissible to evidence Marjam's customers' *motives* for switching distributors. *See Callahan*, 182 F.3d at 252 (accepting hearsay evidence for the purpose of proving customer motive); *see also* FRE 803(3).

4

Unfortunately for Firestone, and unlike in *Stelwagon*, Marjan offers other admissible evidence of actual diverted sales in the form of an expert report.[3] Marjam's expert, Dr. David Blackburn, analyzed Marjam's and the Favored Distributors year-over-year sales of Firestone's products to the Major Customers. Blackburn Report ¶ 69, attachment 13a, ECF No. 189-2. As Blackburn's graph below depicts, while Marjam's sales to the Major Customers generally decreased from 2009-2011, the Favored Distributors' sales to the same customers increased:



*Id.* attachment 13b.

Thus, Marjam presents evidence of *(1)* the fact that the Major Customers purchased more Firestone products from the Favored Distributors—and not from Marjam—from 2009-2011, *see id.*; Appx. to Sharon Decl., Ex. 7, ECF No. 189-13, and *(2)* the Major Customer's motivation for buying from a Favored Distributor instead of Marjam: price, Marjam Opp. Ex. 9 (email from Hamada employee noting "price has become paramount"); Martin Dep. at 69-70 (explaining that Marjam's price was "high for [the] customer."); Metcalf Dep. at 147-149 (explaining All Seasons told Marjam it purchased from a Competitor because Marjam's "pricing was not in line"); Appx. to Sharon Decl., Ex. 7 (email noting Marjam lost "virtually all" of its 2011 Firestone sales "on price"). Taken together, this evidence raises a triable issue as to whether Marjam suffered a competitive injury. *See Volvo*, 546 U.S. at 177 ("A hallmark of the requisite

---

[3] While the plaintiffs in *Stelwagon* submitted expert evidence of actual loss as well, it was ruled inadmissible due to multiple deficiencies. *See Callahan*, 182 F.3d at 254-259 (discussing *Stelwagon*). Like in *Callahan*, those deficiencies are not present in this case. And also like in *Callahan*, Firestone never moved to exclude Marjam's expert's report. *See id.*

5

competitive injury . . . is the diversion of sales or profits from a disfavored purchaser to a favored purchaser.").

### b. *Indirect Evidence of a Competitive Injury*

Marjam also sets forth indirect evidence of a competitive injury. Pursuant to the "*Morton Salt* Inference," plaintiffs may establish the presumption of an injury to competition "by proof of a *substantial price discrimination* between competing purchasers *over time*. In the absence of direct evidence of displaced sales, this inference may be overcome by evidence breaking the causal connection between a price differential and lost sales or profits." *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435 (1983) (emphasis added) (citing *FTC v. Morton Salt Co.*, 334 U.S. 37, 46 (1948)).

As a threshold matter, provision of inequitable rebates (or other terms of sale) is materially equivalent to "price discrimination," and thus can trigger the *Mortan Salt* Inference. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 534 (6th Cir. 2004) ("In addition to 'direct' price discrimination, courts have held that § 2(a) also extends to 'indirect' price discrimination, where identical price structures are made disparate through, for example, the granting of rebates, the payment of shipping costs, or the provision of free goods."); *see also* Metcalf Dep. at 157 (explaining benefit of extended financing offered by Firestone to the Favored Distributors). Therefore, the Court rejects any argument that Firestone did not discriminate merely because it charged the same price up front. Whether such discrimination occurred "substantial[ly] . . . over time" is a separate question. *See Rose Confections, Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381, 387 (8th Cir. 1987) (finding two years of free chocolate chip delivery sufficient).

Marjam presents evidence of price discrimination from 2009-2011 in the form of inequitable rebates and terms of sale offered to the Favored Distributors and not Marjam. For example, Marjam's evidences that:

- In 2009-2010, Firestone provided rebates to the Favored Distributors with proportionally lower "gates" (i.e., threshold sales volumes before rebates were paid) than those offered Marjam. *See* Blackburn Rep. ¶¶ 29-42. In some instances, the Favored Distributors had no threshold sales volume before rebates kicked in, while Marjam always had rebate gates. *See id.*
- In 2009-2010, Firestone offered the Favored Distributors higher rebates than those offered to Marjam. *See* Sharon Decl., Exs. 13-34. In some instances, the rebates offered were more than double those offered Marjam. *See id.*
- In 2009-2011, Firestone offered extended payment and financing terms to some Favored Distributors, but not to Marjam. *See id.*, Exs. 56-58.
- In 2010-2011, Firestone gave some Favored Distributors special rebates and discounts that were never offered to Marjam. *See id.*, Exs. 11-12, 54; Blackburn Rep. ¶¶ 40-41.
- In 2011, Firestone offered the Favored Distributors rebate programs, but offered no program to Marjam. *See* Sharon Decl., Exs. 13-34, 45; Metcalf Dep. 86.
- Throughout their relationship, Firestone provided rebates to Marjam on an annual basis, but paid some Favored Distributors on a quarterly basis, which is preferable for distributors. *See* Appx. to Sharon Decl., Ex. E, Hausz Dep. at 102-05; Sharon

6

Decl., Ex. 36.
- Throughout their relationship, Firestone negotiated with the Favored Distributors regarding their rebate programs, but refused to negotiate with Marjam. *See* Sharon Decl., Exs. 35-36, 41-44; Hausz Dep. at 163-66.

This is adequate evidence of "substantial" price discrimination "over time" to trigger the *Mortan Salt* Inference. *See Rose Confections, Inc.*, 816 F.2d at 387 (two years of free delivery adequate); *compare J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1538 (3d Cir. 1990) (holding *Mortan Salt* Inference most likely triggered when price discrimination influenced resale prices in a low margin market) *with* Blackburn Rep. ¶ 48 (describing effect of discrimination on resale pricing given low-margin, competitive market).

Firestone argues it can rebut the *Morton Salt* Inference because it has evidence that conduct besides the alleged price discrimination caused Marjam's losses. Firestone Mot. at 16-21. While the *Morton Salt* Inference "may be overcome by evidence breaking the causal connection between a price differential and lost sales or profits," *Falls City Indus., Inc.*, 460 U.S. at 435, here, Marjam presents affirmative causation evidence. *See supra* Part II.C.1.a (describing testimony of Major Customers' motivations for switching distributors). As Marjam is the non-moving party, the Court must view this competing evidence in Marjam's favor. *See Scott*, 550 U.S. at 378. Therefore, even assuming Firestone has causation-breaking evidence, the Court will not grant its motion for summary judgment. *See* FRCP 56.

### 2. *Antitrust Injury*

Firestone alternatively argues there is no genuine issue of material fact as to whether Marjam suffered an "antitrust injury," and therefore it is entitled to summary judgment.

To recover damages on a Section 2(a) claim, plaintiffs must prove they suffered an "antitrust injury." *Stelwagon*, 63 F.3d at 1273. Antitrust injuries have three elements: *(1)* an injury-in-fact; *(2)* that has been caused by the Act's violation; and *(3)* that is the type of injury contemplated by the Act. *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1977).

#### a. *Injury-in-Fact and Causation*

While listed as separate elements, both the courts and the parties here address the injury-in-fact and causation elements together. Both those elements are satisfied by "proof of some damage flowing from" the Act's violation. *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 483 (3d Cir. 1998). "[I]nquiry beyond this minimum point goes only to the amount and not the fact of damages. It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury." *Id.*

Marjam presents sufficient evidence connecting Firestone's discriminatory conduct to Marjam's lost profits (i.e., the injury) to raise a genuine issue of material fact. As previously noted, Marjam presents evidence that *(1)* it lost customers from 2009-2011 and *(2)* those customers migrated to the Favored Distributors because of Marjam's unfavorable prices. *See supra* Part II.C.1.a. Marjam also presents evidence that *(3)* due to those lost customers, it lost significant profits (i.e., suffered an injury). Blackburn Report ¶¶ 67-70 (describing $1.1 million

7

as lower bound of lost profit).[4] Therefore, so long as Marjam can link its unfavorable prices to Firestone's price discrimination, summary judgment should be denied. *Rossi*, 156 F.3d at 483 (only requiring illegality to be "*a* material cause" of the injury (emphasis added)).

Here, Marjam sufficiently demonstrates a link between Firestone's price discrimination and Marjam's ability to compete to raise a triable issue of material fact. The connection between a distributor's purchase and sale price may be so obvious that no evidence is required. *See Scott*, 550 U.S. at 378 (requiring courts to draw all reasonable inferences in the nonmovant's favor). However, Marjam points to ample record evidence. For example:

- Firestone's own Mid-Atlantic Regional Business Manager testified that he knew of distributors factoring rebates into their pricing. *See* Appx. to Sharon Decl., Ex. I, Pribble Dep. at 108.
- One of Firestone's manufacturing representatives (through which it sells to distributors) suggested adding a rebate to certain products because "Firestone is truly out in left field regarding market pricing" and, as a result, the distributors were selling more of Firestone's competitors' products. *See* Sharon Decl., Ex. 61.
- One of the Favored Distributors' agents testified that rebates affect their prices, and even said the rebates could be factored into a specific job's pricing. Appx. to Sharon Decl., Ex. F, Kubica Dep. at 81.
- Marjam's expert explained that due to the low-margin nature of the business and lower post-rebate prices offered to the Favored Distributors, "Marjam was at a consistent disadvantage." Blackburn Rep. ¶¶ 48-49.

Accordingly, Marjam presents evidence that *(1)* Firestone's discrimination caused Marjam's inability to compete on price; *(2)* that inability caused the Major Customers to purchase from the Favored Distributors instead of Marjam; and *(3)* due to the major customers Migration, Marjam lost profits. Therefore, at least at the summary judgment stage, Marjam has met its burden of "proof of some damage flowing from" the Act's violation. *Rossi*, 156 F.3d at 483.

### b. *Type of Injury Contemplated by the Statute*

In addition to the first two elements, Firestone argues there is no genuine issue of material fact as to the third element of an antitrust injury: that plaintiffs' injury was of the type "contemplated by the statute." *Brunswick Corp.*, 429 U.S. at 489. Firestone asserts:

---

[4] Firestone quibbles with Blackburn's methodologies, including his failure to address alternative causes of lost profits. However, like in *Callahan*, Firestone never moved to exclude Blackburn's testimony. 182 F.3d at 254. And, like in *Callahan*, Blackburn provides sufficient evidence of causation to raise a triable issue of material fact. *Id.* at 259 ("[B]efore us is only the question whether the defendants' unlawful actions caused the plaintiffs' losses," and not "whether a plaintiff has brought forth sufficient evidence to justify [any] actual damages awarded."). Firestone can certainly argue to the jury that Blackburn's calculations are inaccurate, but Blackburn's report, "*in conjunction with the customer evidence discussed above*, constitutes sufficient evidence of causation." *Id.* at 260 (emphasis in original).

8

> Marjam fails to present evidence of competitive injury. It follows, then, that
> Marjam cannot support a claim that its injuries are the type of injury contemplated
> by the Act, as required to prove antitrust injury. The lack of evidence of substantial
> loss of sales and customers to allegedly favored purchasers—and the lack of a
> causal connection between such losses and any alleged conduct by Firestone—is
> a powerful indication that price discrimination did not harm competition.

Firestone Mot. at 27-28 (citations omitted).

Firestone's argument is deficient for multiple reasons. First, it impermissibly folds the third element of an antitrust injury into the first two. Firestone simply summarizes its previous arguments, then claims this is "powerful evidence" that the third element is lacking. *See id.* The authorities cited for that proposition make no similar leap, and in fact, focus on the other elements of an antitrust injury. *See Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 561-62 (1981) (discussing injury-in-fact); *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1022 (2d Cir. 1989) (discussing causation); *Interstate Cigar Co. Inc. v. Sterling Drug Inc.*, 655 F.2d 29, 31 (2d Cir. 1981) (discussing injury-in-fact). Second, even if the Court were inclined to agree with Firestone's statement of the law, the factual predicates are incorrect. Marjam *does* present evidence of an injury-in-fact, a competitive injury, and causation. *See* Blackburn Report ¶¶ 67-70 (describing lost profit); *supra* Part II.C.1 (finding a competitive injury), II.C.2.a (finding causation). Therefore, a triable issue of material fact remains on whether Marjam suffered an antitrust injury.

### 3. *"Same Grade and Quality" and "Discriminated in Price"*

Intermixed with Firestone's primary arguments, Firestone asserts it did not actually discriminate in price, in part because Blackburn's analysis did not compare the prices of Firestone's products "of the same grade or quality," as required by the Act. *See* Firestone Mot. at 5, 7, 13-15.

Neither point is persuasive. The Court already rejected the argument that inequitable rebate or terms of sale offerings are not price discrimination. *See supra* Part II.C.1.b. The Court also noted the existing evidence of price discrimination was enough to raise a triable issue of fact. *See id.*

As to the "same grade or quality," Firestone's argument misses the mark. Marjam's claims incorporate *all* Firestone roofing products. Their contention is that when a Major Customer needed, for example, ten units of Firestone's .045 Low Slope FR (".045FR"), the customer planned to purchase that exact product from one of the distributors. Due to Firestone's inequitable rebate program, the effective price for Marjam to purchase the .045FR was higher than the Favored Distributors' price. As the Favored Distributors could pass their rebate on to the customer through lower prices, the Major Customers purchased the .045FR from the Favored Distributors instead of Marjam. Thus, Marjam's claims make the "apples-to-apples" comparisons required by the Act. *See Feesers*, 498 F.3d at 212.[5]

---

[5] Even if Firestone carries multiple grades of .045FR, the customer would order the same grade (i.e., the

9

For these reasons, Firestone's motion for summary judgment on Marjam's Section 2(a) claims (Counts One and Two) is **DENIED**.

### D. Section 2(d) Claim

Firestone also moves for summary judgment on Marjam's Section 2(d) claim (Count Four). Firestone argues *(1)* that the Section 2(d) claim should be dismissed for the same reasons as the Section 2(a) claims and *(2)* in any event, the claim "does not fall within the realm of Section 2(d)." Firestone Mot. at 30.

Firestone's first argument is unpersuasive. As discussed above, there is a genuine issue of material fact as to each element of Marjam's Section 2(a) claims. *See supra* Part II.C. As to Firestone's second argument, in deciding Firestone's motion to dismiss, the Court held:

> Marjam alleges the following: that Firestone sold identical products to Marjam at higher prices than it did to Marjam's direct competitors; that Firestone offered promotional allowances and rebates to Marjam's direct competitors which it did not offer to Marjam; that as a result of Firestone's behavior, Marjam became unable to compete with its direct competitors in sales of Firestone Products to third parties; and that ultimately, Firestone's actions have decreased the competition for sales of Firestone Products in certain geographic markets. On these facts, the Court finds that Marjam has sufficiently alleged its § [2](a) and § [2](d) claims against Firestone.

Op. at 4 (Nov. 30, 2012). In response to Firestone's current motion, Marjam has presented sufficient evidence to raise a triable issue on each of the above-described allegations. Therefore, for the same reasons the Court denied Firestone's motion to dismiss, Firestone's motion for summary judgment on Marjam's Section 2(d) claim (Count Four) is **DENIED**.

### E. Inter-Brand Competition

Firestone separately urges the court to grant summary judgment on Marjam's Sections 2(a) and 2(d) claims because inter-brand competition between Firestone and other roofing-product manufacturers precludes a finding of the requisite "injury to completion." Firestone Mot. at 32. Firestone argues that "[s]o long as other manufacturers compete with Firestone—which they do—and Marjam had access to the competing products—which it did—vibrant interbrand competition will act as a check on any intrabrand advantage that the favored purchasers allegedly received." Firestone Mot. at 32-33 (citing *Gorlick Distribution Centers, LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019 (9th Cir. 2013)).

Firestone's argument is unpersuasive, even assuming inter-brand competition can completely negate intra-brand competitive injuries. *Cf. Bedford Nissan, Inc. v. Nissan North America, Inc.*, No. 16-cv-423, 2016 WL 6395799, at *3-5 (describing the Act's applicability to intra-brand competitive injuries, especially in secondary-line cases). First, Marjam evidences that Firestone threatened to revoke Marjam's distributorship if it carried another manufacturer's products. Metcalf Dep. 127-130. Therefore, Firestone's conduct *did* injure inter-brand

---

same item) from one of the competing distributors.

competition. Second, some Major Customers exclusively used Firestone-branded roofing products. *See id.* at 112, 149. Therefore, Marjam could not swap manufacturers and continue to compete for those customers' business, producing a drop in intra-brand competition with no inter-brand offset. Therefore, a triable issue exists regarding whether Firestone's conduct adequately injured competition. *See Bedford Nissan, Inc.*, 2016 WL 6395799, at *5 (denying dismissal where Nissan discriminated between Nissan dealerships, which competed both with each other and with other manufacturers' dealerships). Firestone may convince the jury that no harm to competition occurred, but given the existing evidence, summary judgment is **DENIED**.

## III. CONCLUSION

For the reasons set forth above, Defendants Firestone Building Products Company, LLC's, Firestone Diversified Products, LLC's, and GenFlex Roofing Systems, LLC's collective motion for summary judgment, ECF No. 188, is **DENIED**.

|  |  |
|---|---|
| | */S/ William J. Martini* |
| **Date: April 1, 2019** | **WILLIAM J. MARTINI, U.S.D.J.** |